FILED

2006 Aug-22  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED NATIONAL INSURANCE COMPANY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | )     **5:05-CV-2039-VEH** |
| v. | ) |
| | ) |
| | ) |
| MONT-CULLMAN, INC., et al. | ) |
| | ) |
| **Defendants.** | ) |

## <u>Memorandum Opinion</u>

Pending before the Court is the Motion for Summary Judgment (doc. 21) filed by Plaintiff United National Insurance Group ("United National") against Defendants Mont-Cullman, Inc., Mont. Toccoa, Inc., Piedmont Paints & Primers, Inc., Peerless Coatings, Inc. and Peerless Coatings (Toccoa), Inc. (collectively referred to as "Peerless"), and Defendant Evans Cabinet Corporation, as the successor to Rentz Cabinet Company, Inc. ("Evans/Rentz"). The motion was filed on the grounds that Peerless failed to provide United National with timely notice of claims and further failed to give timely notice of suit, as required by its insurance policy. United National seeks a declaration by this Court that no coverage exists and it thus has no duty to defend or indemnify Peerless in the underlying state court action. In the

underlying state court action, Peerless and Regions Bank have sued Evans/Rentz for payment on a contract of sale and Evans/Rentz has counterclaimed against Peerless seeking money damages for losses allegedly incurred as a result of Peerless's allegedly defective product used on jobs located in Milwaukee, Wisconsin, Swampscott, Massachusetts, and Huntsville, Alabama.

_____The matters have been briefed by the appropriate parties and are now ripe for determination.

For the reasons stated herein, the Plaintiff's Motion for Summary Judgment is due to be **DENIED**.

## **Relevant Facts**

1.     Named insureds, Peerless Coatings, Inc. ("Peerless") and Raymond Burleson were insured under United National CGL policy number MOP1000008 (coverage form CG 00 01 10 93, as modified by form CG 0043 (05/92)), with effective dates of December 31, 1999 to December 31, 2000.  The policy was delivered to Peerless at its place of business in Cullman, Alabama.  [Affidavit of Duane Parker, submitted as Pla. Exhibit A, at ¶ 1, p. 2; Policy MOP1000008, submitted as Pla.  Exhibit A-1, at "Mont-Cullman 00159"].

2.     Peerless purchased the stock of Piedmont Paints and Primers ("Piedmont") from Walter M. Daves on May 11, 2000, making Piedmont a wholly owned

subsidiary.  [Pla. Ex. A, at ¶ 3, p. 2; Pla. Ex. A-1, at "Mont-Cullman 00168"].

3.     Piedmont was added to the United National policy as a named insured under Endorsement #4, effective May 11, 2000.  [Pla. Ex. A, ¶ 3, p. 2; Pla. Ex. A-1, at "Mont-Cullman 00169"].

4.     Policy MOP1000086 was issued to named insured Peerless Coatings, Inc., Raymond Burleson, and Piedmont Paints & Primers, Inc. The policy period for MOP 1000086 was December 31, 2000 to December 31, 2001. [Pla. Ex. A, at ¶  4, p. 2; Policy MOP1000086, submitted as Pla.  Exhibit A-2, at "Mont-Cullman 00194"].

5.     Policy MOP1000238 was issued to Peerless Coatings, Inc. and  Raymond Burleson, although the named insured was changed effective on January 1, 2002, to Peerless Coatings, Inc., and Peerless Coatings (Toccoa), Inc. The policy period for MOP 1000238 (coverage form CG 00 01 01 96) was December 31, 2001 to December 31, 2002. [Pla. Ex. A, at ¶ 5, p. 3; Policy MOP1000238, submitted as Pla.  Exhibit A-3, at "Mont-Cullman 00212"].

6.     Piedmont had previously been insured with Reliance National Indemnity Company ("Reliance") under CGL policy number NGB251629602, with effective dates of September 23, 1999 to September 23, 2000.  [Pla. Ex. A, at ¶ 6, p. 3; Reliance Policy, submitted as Pla. Exhibit A-4, at "Mont-Cullman 00001"].

7.     In conjunction with the stock purchase, the Reliance policy was cancelled

effective May 11, 2000.  [Pla. Ex. A, at ¶ 7, pp. 3; Cancellation Request, submitted as Pla. Exhibit A-5, at "Mont-Cullman 00106"].

8.      Between January 6 and March 9, 2000, Piedmont shipped two different coatings (finishing products) to Evans Cabinets/Rentz Cabinets ("Evans/Rentz"). [Pla. Ex. A, at ¶ 8, pp. 3-4; Correspondence dated April 23, 2002, submitted as Pla. Exhibit A-6, at "Mont-Cullman 00085"].

9.      Evans/Rentz applied these finishing products to cabinets manufactured in Dublin, Georgia, which it in turn shipped to Gibraltar Construction in Milwaukee, Wisconsin between January 8 and March 25, 2000.  [Pla. Ex. A, at ¶ 9, p. 4; Correspondence dated August 19, 2002, submitted as Pla. Exhibit A-7, at "Mont-Cullman 00079"].

10.    In August 2001, HUD inspected the subject cabinets, noted cracking, and required that Evans/Rentz repair/replace the damaged cabinets.  [Pla. Ex. A, at ¶ 9, p. 4; Correspondence dated July 11, 2002, submitted as Pla.  Exhibit A-8].

11.    Peerless was first made aware of the problem with the cabinet coatings in August 2001.  [Pla. Ex. A, at ¶ 10, p. 5; Correspondence dated September 9, 2002, submitted as Pla.  Exhibit A-10].

12.    Evans/Rentz replaced the damaged cabinets and thereafter withheld payment for products shipped to it by Peerless. [Pla. Ex. A, at ¶ 14, p. 6; Correspondence dated

4

November 27, 2002, submitted as Pla. Exhibit A-14].

13.    On February 7, 2002, Evans/Rentz initiated settlement discussions with Peerless.  [Pla. Ex. A, at ¶ 9, p. 4; Correspondence dated February 7, 2002, submitted as Pla.  Exhibit A-9, at "Mont-Cullman 00074"].

14.    Peerless notified Reliance, Piedmont's prior carrier, of the claim on February 21, 2002.  [Pla. Ex. A, at ¶ 11, p. 5;  Correspondence dated February 21, 2002, submitted as Pla.  Exhibit A-11, at "Mont-Cullman 00082"].

15.    On May 3, 2002, Peerless first notified United National of the claim for the Milwaukee, Wisconsin job. [Pla. Ex. A, at ¶ 12, p. 5; Correspondence dated May 3, 2002, submitted as Pla.  Exhibit A-12, at "Mont-Cullman 00110"].

16.     On May 12, 2003, Peerless filed a declaratory judgment action in the United States District Court for the Northern District of Alabama, Northeastern Division, CV-03-S-1102-NE, against Walter M. Daves, alleging that he owed Peerless indemnity for the damages caused by the defective products Piedmont shipped to Evans/Rentz prior to the time Piedmont was acquired by Peerless.  [Pleadings from CV-03-S-1102-NE, submitted as Pla.  Exhibit B, pp. 5-9].

17.    Pursuant to the Court's order, the parties mediated the case on September 15, 2003.  United National received no notification of the pending suit or the mediation.  [Pla. Ex. A, at ¶ 19, pp. 7-8; Pla. Ex. B, p. 39-41].

18.     Upon Peerless's motion, the Court ultimately dismissed the case without prejudice on January 9, 2004.  [Pla. Ex. B, p. 43].

19.     Peerless and Regions Bank (who had acquired a security interest in the Peerless entities) then filed a declaratory judgment action in state court against Walter M. Daves and Evans/Rentz on March 4, 2004, which is currently pending as CV-2004-121 in the Circuit Court of Cullman County, Alabama.  United National was again not notified of the suit.  [Pleadings from CV-2004-121, submitted as Pla. Exhibit C, pp. 1-11; Pla. Ex. A, at ¶ 19, p. 8].

20.     On April 6, 2005, Evans/Rentz filed a counterclaim against Peerless.  [Pla. Ex. C, pp. 65-69].

21.     In the counterclaim, Evans/Rentz alleges breach of implied warranties and claims that Piedmont shipped to Evans/Rentz defective products prior to the closing of the stock purchase by Peerless in May of 2000.  Evans/Rentz alleges that it coated cabinets with faulty products purchased from the Counterclaim Defendants and their predecessors and that Evans/Rentz had to pay contractors to remove and replace the cabinets in Wisconsin, Massachusetts, and Alabama for a total claim of $512,884, in addition to interest and costs.  [Pla. Ex. C, pp. 65-69].

22.     On May 6, 2005, prior to notifying United National of any pending claims or occurrences that may give rise to claims, Peerless filed an answer to the counterclaim

without including a demand for a jury.  [Pla. Ex. C, pp. 70-73].

23.    On July 13, 2005, the case was set for trial for September 9, 2005, which was later continued to November 1, 2005.   [Case Action Summary Sheet, submitted as Pla.  Exhibit D].

24.    On August 8, 2005, United National first received notice of the suit and the counterclaim.  [Pla. Ex. A, at ¶ 17, pp. 6-7; Correspondence dated August 5, 2005, submitted as Pla. Exhibit A-16].

25.    United National is currently defending Peerless in the counterclaim under a reservation of rights.  [Pla. Ex. A, at ¶ 18, p. 7].  Additionally, United National has intervened in the underlying state court case and moved to stay the state court action pending resolution of the coverage issues before this Court.  [Pla. Ex. C, pp. 75-81]. [Pla. Ex. C, pp. 115].

26.    The United National policy requires the insured to notify United National as soon as practicable in the event of any occurrence, offense, claim or suit.  SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS of form **CG 00 01 10 93**, as modified by form CG 00 43 (05/92) provides as follows in pertinent part:

      2.    Duties In The Event Of Occurrence, Offense,

              Claim Or Suit.

              a.    You must see to it that we are ***notified as soon as***

*practicable* of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include[1]:

    (1)    How, when and where the "occurrence" or offense took place;

    (2)    The names and addresses of any injured persons and witnesses; and

    (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured,  you must:

    (1)    Immediately record the specifics of the claim or  "suit" and the date received; and

    (2)    *Notify us as soon as practicable*.

You must see to it that we receive written notice of the claim or "suit" *as soon as practicable*.

c.    You and any other involved insured must:

    (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"

    (2)    Authorize us to obtain records and other information;

    (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit", and

    (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

[Pla. Ex. A-1, Section IV, at "Mont-Cullman 00188-189"][emphasis added].

---

[1] The insurance policy does not provide a definition for the term "offenses".

27.    The policies provide the following pertinent definitions:

    12.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

    16.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury", or "advertising injury" to which this insurance applies are alleged. "Suit" includes:
        a.    An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or
        b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

[Pla. Ex. A-1, Section IV, at "Mont-Cullman 00188-189"].

28.    A letter dated September 9, 2002 addressed to Mr. Raymond Burleson of Peerless Coatings, Inc., written by Mr. Mark A. Trexler, President/COO of Evans Cabinet Corp., included the following pertinent information:

> You stated your belief that our cold checking problem at the **Milwaukee** Housing Authority is an isolated incident.  This is not the case.  I made Peerless Coatings, Inc. aware of an adhesion problem in Light Pickle finish at **Huntsville, AL**-Redstone in **June 2002**.  Cold check problems in 648 finish at **Swampscott, MA** in **December 2001.**  Cold check problems at **Lincoln, NE** in 648 finish in **March 2002.**  Cold check and adhesion problems in Light Pickle at Kinzee in **NY** in **July 2002.**

It further states:

9

> Actually, we have a widespread problem ...all related to products provided by Peerless. *** I feel that your cold check testing is inadequate...is not as strenuous a test as required by furniture industry standards. *** Your obligation to Evans Cabinet as a result of your product failures equals or exceeds the amount of our account.  Please reflect the appropriate credit.

[Pla. Ex. A, at ¶ 19, p. 7; Correspondence from Evans, submitted as Pla. Exhibit A-17][Emphasis added].

29.    United National requested specific information regarding the application of the coatings to the cabinets and the type of materials from which the cabinets were made, etc. [Correspondence from United National to Peerless dated June 7, 2002, submitted as Def. Exhibit 7.]

30.    Peerless complied with United National's requests.  [Correspondence from Peerless to United National dated July 9, 2002, submitted as Def. Exhibit 8.]

31.    United National employed an expert to investigate the possible cause of the damage to the subject cabinets.  [Correspondence from United National to Peerless dated July 15, 2002, submitted as Def. Exhibit 9.]

32.    By letter dated October 16, 2002, United National denied coverage of Peerless's claim related to the Milwaukee, Wisconsin job.  [Affidavit of Duane Parker, at ¶13.]

33.    Peerless later filed separate federal and state lawsuits solely involving its claim related to the Evans/Rentz job in Milwaukee, Wisconsin – a claim for which United

10

National had previously denied coverage. [Affidavit of Duane Parker, at ¶¶ 13-15].

34.     Evans/Rentz's counterclaim involves claims for jobs in Milwaukee, Wisconsin (seeking $474,005 in damages), Swampscott, Massachusetts (seeking $11,086 in damages), and Huntsville, Alabama (seeking $27,793 in damages). [Counterclaim filed by Evans/Rentz on April 6, 2005, submitted as Def. Exhibit 10, at ¶ 9].

35.     Evans/Rentz's counterclaim makes no mention of claims for jobs in Nebraska or New York. [Counterclaim filed by Evans/Rentz on April 6, 2005, submitted as Def. Exhibit 10, at ¶ 9].

36.     Duane C. Parker, Senior Claims Examiner for United National, provided the following relevant information in an affidavit dated March 13, 2006:

> Peerless knew about the Alabama and Massachusetts claims (alleged in the counterclaim) in June of 2002 and December 2001, respectively, yet did not inform United National of those claims. Peerless has never provided any information to Untied National regarding the Alabama and Massachusetts claims.
>
> Evans/Rentz notified Peerless of additional claims in Nebraska and New York in March of 2002 and July of 2002, yet Peerless has never notified United National of the New York Claim [sic] and has never provided any information to United National regarding the Nebraska claim.
>
> ***
>
> Likewise, United National was given no notice of the state court action filed by Peerless in Cullman County on March 4, 2004, until the August 2005 letter.

11

[Affidavit of Duane C. Parker, at ¶ 19].

## Standard of Review for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v.*

*City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether the party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir.)).  If the moving party bears the burden of proof at trial, then it can only meets its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not converted at trial.  *Id.* at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party

satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  When responding, however, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## Applicable Substantive  Law

Under the *Erie* doctrine, when a federal court exercises diversity jurisdiction, procedural issues are governed by federal law, while substantive issued are governed by the substantive law of the state in which the court sits.  *See Ferris v. Jennings*, 851 F.Supp. 418, 421 (M.D. Ala. 1993)*(*citing *Erie R.R. v. Tomkins*, 304 U.S. 64 (1938)).  Thus, in this diversity jurisdiction case, Alabama law applies.   With regard to insurance contracts, Alabama applies the law of *lex loci contractus*; in other words, when considering the interpretation and construction of the policy, the law of the state where the insurance policy was delivered is applicable.  *See Ailey v. Nationwide Mut. Ins. Co.*, 470 So. 2d 598 (Ala. 1990).

In the case presently before this Court, the insurance  policy was delivered to Peerless at its place of business in Cullman, Alabama.  Therefore, Alabama law applies to the analysis of issues in this matter.

## Analysis

### I.    Waiver

Peerless seeks to preclude United National from asserting untimely notice as a defense to the counterclaim filed against Peerless.  Peerless explains that when United National denied the Wisconsin  claim, it failed to cite untimely notice as a basis for its denial.  Peerless asserts that under Alabama law, "[w]hen an insurer

specifically denies liability on one ground, it thereby waives all other grounds of forfeiture." *Am. Auto. Ins. Co. v. English*, 94 So. 2d 397, 402 (Ala. 1957). First, the Court will point out that according, to United National's insurance policy, the duties to notify the insurer of claims and to notify insurers of suits are separate and distinct conditions precedent of the policy. The issue of whether Peerless notified United National of the Wisconsin occurrences giving rise to the claim turns on the fact that the insurance company clearly knew of the occurrences prior to denying them. Thus, when United National denied coverage for the Wisconsin occurrences based on the assertion that the time was "outside policy period", it had knowledge of the occurrences at that time and therefore it is axiomatic that it had notice at that time. It did not, however, have notice of the counterclaims, which had not yet been filed.

Peerless argues, however, that by denying coverage for the Wisconsin **claims** without raising the lack of notice defense, United National has effectively waived its right to notice of suit. The maxim that "[w]hen an insurer specifically denies liability on one ground, it thereby waives all other grounds of forfeiture" ( *Am. Auto. Ins. Co. v. English*, 94 So. 2d at 402) is a correct, but incomplete, statement of the law applicable to this case. A more comprehensive understanding of the law reveals that denial of liability by an insurer on one ground does not *per se* compel the finding that the insurer has waived its right to assert all defenses. A correct statement of the

16

applicable law provides that "an insurer who specifically denies liability on one ground waives all other grounds or defenses *it could have raised but did not*." *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1323 (11th Cir. 2004) (emphasis added) (citing *Home Indem. Co. v. Reed Equip. Co., Inc.*, 381 So. 2d 45, 50 (Ala. 1980)). "[A]n insurer who disclaims liability solely on a theory of non-coverage thereby waives his defenses with respect to any grounds of forfeiture *which might have been raised*." *Home Indem. Co.*, 381 So. 2d at 50 (emphasis added).[2] According to the record, United National denied coverage for the Milwaukee claim in October, 2002. Evans/Rentz filed its counterclaim against Defendants in April, 2005. Accordingly, because the denial predated the existence of the counterclaim, the defense of untimely notice of the counterclaim could not have been known or asserted at the time coverage was denied on other grounds. Therefore, United National has not waived the defense of untimely notice of the *counterclaim* and is not precluded from asserting that defense. Accordingly, because United National is entitled to assert the defense of untimely notice, the Court must now determine whether there is a genuine issue of material fact as to whether Peerless provided timely notice to United National in relation to the occurrences, offenses, claims, or

---

[2] The Alabama Supreme Court has defined waiver as the "'voluntary and intentional surrender or relinquishment of a *known right*.'" *Mobile Airport Auth. v. HealthSTRATEGIES, Inc.*, 866 So. 2d 773, 782 (Ala. 2004) (emphasis added) (quoting *Dominex, Inc. v. Key*, 456 So. 2d 1047, 1058 (Ala. 1984)).

suits at issue in Wisconsin as well as in Alabama, Massachusetts, Nebraska, and New York.

## II.    Notice

United National contends that Peerless failed to provide timely notice of occurrences or offenses that may give rise to a claim, and further failed to give timely notice of claims or suits in connection with jobs in Wisconsin as well as in Alabama, Massachusetts, Nebraska, and New York, as required by the insurance policy.[3] Accordingly, it asserts that it has no duty to defend or indemnify Peerless in the underlying state court action.

The clear language of the United National policy requires notice of any occurrence or offense "as soon as practicable"; and it requires written notice of any claims or suits as soon as practicable.  The policy further requires that, in the event a claim is made or "suit" is brought against any insured, the insured must "*[i]mmediately* record the specifics of the claim or 'suit' and the date received"; and notify United National as soon as practicable.  Furthermore, the insured must see to it that United National receive written notice of the claim or "suit" as soon as practicable and that the insured must "*[i]mmediately* send [United National] copies

---

[3]The insurance policy provides that regardless of whether it is an occurrence, offense, claim, or suit, the insured must provide United National with notice as soon as practicable. [Pla. Ex. A-1, Section IV, at "Mont-Cullman 00188-189"].

of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'".   [Pla. Ex. A-1, Section IV, at "Mont-Cullman 00188-189"][emphasis added].

The Alabama Supreme Court has routinely construed the terms "as soon as practicable" and "immediately"  to require that notice be given "'within a reasonable time' in view of all the facts and circumstances of the case." *Southern Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882 (Ala. 1976) (*citing American Liberty Ins. Co. v. Soules,* 258 So. 2d 872, 879 (Ala. 1972) (six month delay was unreasonable as a matter of law, claimant's attorney had advised insured to notify carrier and insured's own attorney had advised insured to let him review the policy).  In  *USF&G v. Baldwin Co. Homebuilders Assoc., Inc.*, the court interpreted "as soon as practicable" to mean that the insured "must give notice within a ***reasonable*** time under all of the circumstances."  *USF&G v. Baldwin Co. Homebuilders Ass'n., Inc.*, 770 So.2d 72, 75 (Ala. 2000)(emphasis added).   Under Alabama law, the only factors to be considered by a court in determining the reasonableness of a delay in giving notice to an insurer are (1) the length of the delay and (2) the existence of a reasonable excuse for the delay. *Thomas*, 334 So.2d at 883 (Ala.1976); *see also USF&G*, 770 So.2d at 75-76.

The counterclaim at issue was filed by Evans/Rentz in April, 2005 and involves

claims for jobs using Peerless's products in Wisconsin, Alabama, and Massachusetts. According to the record, United National first became aware  of the Alabama and Massachusetts claims four months after the counterclaim was filed.  It learned of the counterclaim through its intervention in the state court case after being notified of the suit by Peerless in August of 2005.  At the time United National was made aware of the counterclaim,  Peerless had already filed an answer and a date for trial had been set.[4]  Because of this four month delay in properly notifying United National of the counterclaim, United National asserts that it has no duty to defend or indemnify Peerless in the underlying suit.

Peerless responded to United National's assertion by explaining that its delay in notifying United National was partially based on the fact that the damages sought by Evans/Rentz in its counterclaim related to the Alabama and Massachusetts claims were less than 8% of its total alleged damages and, because United National had already denied coverage  and reaffirmed its denial upon request from Peerless's

---

[4] "The rule established by the great weight of authority is that where, as in the policy involved in this case, notice of the accident and forwarding of any demand, notice, summons or other process are specifically made a condition precedent to any action against the insurer, the failure to give a reasonably timely notice of the accident or of the receipt of any demand, notice, summons or other process will release the insurer from the obligations imposed by the contract, although no prejudice may have resulted." *American Fire & Cas. Co. v. Tankersley*, 116 So.2d 579, 582 (Ala.1959); "It is implicit in what has been said up to this point that under Alabama law there are only two factors to be considered in determining the reasonableness of a delay in giving notice to an insurer: the length of the delay and the reasons for the delay. The insured has argued that another factor should be considered, viz, the absence of prejudice to the insurer from the delay. But, under our cases, whether the insurer was prejudiced by the delay is immaterial to a determination of the reasonableness of the delay where the giving of reasonably timely notice is expressly made a condition precedent to any action against the insurer, as in this case." *Pharr v. Continental Cas. Co.,* 429 So.2d 1018, 1020 (Ala.,1983).

attorney for an identical claim in Wisconsin that comprised the remaining 92% of Evans/Rentz's claimed damages,  Peerless had no expectation that United National would provide coverage for Alabama or Massachusetts.[5]

Evans/Rentz's counterclaim, for which Peerless seeks coverage, does not mention any claims in Nebraska or New York.  However, United National asserts that it has provided sufficient evidence that Peerless was notified of occurrences that may lead to claims in New York and Nebraska, yet failed to notify United National of those occurrences, thereby failing to satisfy a condition precedent of the policy.

Compliance with the notice requirements set forth in an insurance policy is a condition precedent to recovery.  *Pharr v. Cont.'l Cas. Co.*, 429 So. 2d 1018 (Ala. 1983).  Failure of the insured to comply with notice requirements relieves the insurer of liability.  *See State Farm Fire & Cas. Co. v. Wiggins*, 972 F. Supp. 570, 573 (M.D. Ala. 1997); *Reeves v. State Farm Fire & Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989) ("Our cases have consistently held . . . that the failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract."); S*ee Big Three Motors, Inc. v.*

---

[5] Nevertheless, because Peerless was in financial straits, it attempted to procure a defense from United National by notifying United National of Evans/Rentz's counterclaim in August 2005.

*Employers Ins. Co. of Ala.*, 449 So. 2d 1232, 1235-36 (Ala. 1984) (explaining that where an insurance policy requires timely notice of a claim or suit, a failure of the insured to give timely notice can bar coverage as a matter of law; affirming summary judgment denying coverage and defense).  *See also Southern Guaranty Ins. Co. v. Thomas*, 334 So. 2d 879, 883-85 (Ala. 1976).  However, "[w]here facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question...for the [trier of fact]. *Provident Life & Accident Ins. Co. v. Heidelberg,* 228 Ala. 682, 154 So. 809 (Ala. 1934). *U.S. Fidelity and Guar. Co. v. Baldwin County Home Builders Ass'n, Inc*., 770 So.2d 72, *75 (Ala.,2000); *Thomas,* 334 So.2d at 883; *U.S. Fidelity and Guar. Co. v Bonitz Insulation,* 424 So.2d 569, 572-73 ("the determination of the fundamental issue, whether notice of the occurrence or claim was given to the insurer within a reasonable time, rests on the reasonableness of the delay...If conflicting inferences can be drawn from the evidence, the question of reasonableness is submitted to the trier of fact. If the facts are undisputed, however, and the insured does not show justification for the protracted delay, the court may find the delay unreasonable as a matter of law.")  In the case presently before the Court, the Defendants assert that there is no evidence that they had notice, prior to the filing of the counterclaim, of claims in Alabama and Massachusetts.  Furthermore, they note

the significance in the fact that the  counterclaim does not even make any mention of Nebraska or New York.  They contend that the letter from Evans/Rentz is not sufficient to establish, as a matter of law, that the Defendants had sufficient notice to require them to provide United National with notice as to occurrences, offenses, claims, or suits in Wisconsin, Alabama, Massachusetts, Nebraska, or New York.  The Court agrees with Peerless to the extent that conflicting inferences could be drawn from  the letter and finds that (1) the determination of whether Peerless's excuse for delay is reasonable and (2) whether four months is reasonable delay are both questions for the jury.  Therefore, summary judgment is due to be **DENIED** as to the claims relating to Peerless products used in jobs in Wisconsin, Alabama, Massachusetts, Nebraska, and New York.

## Conclusion

Based on the foregoing, the Motion for Summary Judgment is due to be **DENIED** and United National is not entitled to a declaration in its favor with regard to the duty to defend and indemnify Defendants.

A separate **ORDER** will be entered.

**DONE** this 22nd day of August, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge